UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 07-385-GWU


EDDIE WAYNE HUFFMAN,                                    PLAINTIFF,


VS.                      **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)? If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to

1

07-385  Eddie Wayne Huffman

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

07-385  Eddie Wayne Huffman

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

07-385  Eddie Wayne Huffman

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-385  Eddie Wayne Huffman

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Eddie Wayne Huffman, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of irritable bowel syndrome, decreased left eye vision, and pain in the right arm, shoulder, and low back. (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Huffman retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-25). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 33-year-old man with a high school education and work experience as a stock clerk and dishwasher/cook, could perform any jobs if he were limited to "medium" level exertion, and also had the following non-exertional restrictions. (Tr. 246). He: (1) could not do work requiring stereoscopic vision; (2) could not perform work requiring walking on uneven surfaces; and (3) could perform only occasional overhead reaching with his right arm and occasional climbing. (Id.). The VE responded that

7

there were jobs that such a person could perform, and proceeded to give the number in which they existed in the state and national economies.  (Id.).  If the hypothetical question were modified so that the person could use the bathroom as needed, the VE responded that there would not be any jobs.  (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Huffman alleged disability beginning February 15, 2004 due to irritable bowel syndrome, right shoulder problems, an irregular heart rate, lower back and right ankle problems, and legal blindness in the left eye.  (Tr. 89).  His musculoskeletal problems were so severe that he required taking three Percocet tablets a day along with the muscle relaxant Robaxin four times a day.  (Tr. 239-40). He testified that his irritable bowel syndrome was so severe that he had difficulty even leaving his house because bowel movements could occur at any time despite taking prescription medication and on occasion had to go to the bathroom as frequently as six or seven times in an hour and had very few days in which he was not in pain from the condition.  (Tr. 241-2).

The medical evidence shows that Mr. Huffman had a fairly extensive set of examinations for left leg pain in 1999 by a neurologist, Dr. William Brooks, but his work-up showed an essentially normal examination and an MRI of the lumbosacral spine and nerve conduction velocity test of the left leg were also normal.  (Tr. 126,

07-385  Eddie Wayne Huffman

133, 136).  Dr. Brooks released his patient to return to work at up to the "medium" level of exertion.  (Tr. 123).  There is no evidence of further treatment for these conditions until the plaintiff began treatment with Dr. Truman Perry, a family physician, in late 2004.  (Tr. 172-3).  Dr. Perry did diagnose low back pain, which apparently worsened in March, 2005, and prompted him to prescribe the medications previously mentioned.  (Tr. 170).  Dr. Perry mentioned few or no objective findings, although he commented that the low back pain was tolerable with medications.  (E.g., Tr. 168-70).  Dr. Perry prepared a functional capacity assessment in October, 2006 limiting Mr. Huffman to sedentary level exertion, with less than full-time standing, walking, and sitting, in addition to having numerous non-exertional restrictions.  (Tr. 189-92).  The reason given was low back pain, but once again there were no objective findings mentioned.  For this reason, and because a consultative examination by Dr. Jules Barefoot in October, 2005 was normal (Tr. 159-62), the ALJ declined to accept Dr. Perry's restrictions (Tr. 20-1).  This portion of the decision is supported by substantial evidence.[1]

---

[1]The court notes in passing that substantial evidence also supports the ALJ's determination that the plaintiff's chest pain was non-severe.  (Tr. 16).  The plaintiff also does not specifically challenge the ALJ's conclusion that Mr. Huffman had no medically determinable mental impairment since his onset date (Tr. 17), although there was evidence from a psychiatric source from slightly before the onset date that Mr. Huffman had been diagnosed with a major depressive disorder and an anxiety disorder and had been given a series of work excuses temporarily restricting his employment (Tr. 195-202).

07-385  Eddie Wayne Huffman

The ALJ's handling of the evidence concerning the irritable bowel syndrome is more problematic.

The evidence shows that Mr. Huffman was extensively examined by a gastroenterologist, Dr. Kathleen Martin, beginning in April, 2002, approximately two years before the alleged onset date, for complaints of diarrhea, mucus, rectal bleeding, fatigue, cramping, and heartburn.  (Tr. 219).  While an upper endoscopy showed "severe erosive esophagitis" which was treated by Prilosec, a colonoscopy was normal and Dr. Martin suspected that the plaintiff's bowel problems were related to lactose intolerance.  (Tr. 137-8).  A CT scan of the liver without contrast showed some abnormalities (Tr. 214-15) and Dr. Martin wished to obtain a repeat CT scan with IV contrast (Tr. 213), but apparently the plaintiff was afraid to have this done and it was not performed (Tr. 211).  In any case, he continued to report cramping along with some constipation and diarrhea even without milk in his diet, and on June 26, 2002, reported having diarrhea up to ten times a day (Tr. 210-12). The diarrhea continued in July, despite taking the medication Imodium, and apparently Dr. Martin suspected a condition known as "celiac sprue," although not all of the tests for the condition were positive.  (Tr. 208-9).  In August, 2002, Dr. Martin provided two documents diagnosing irritable bowel syndrome and limiting the plaintiff to either light or sedentary work with "unlimited bathroom privileges" until he was reevaluated in September.  (Tr. 203-4).  However, she wrote a letter dated August 26, 2002 stating that despite extensive testing, she was not able to provide

10

07-385  Eddie Wayne Huffman

a definite reason for Mr. Huffman's continued diarrhea, and although he was able to work, he needed to have unlimited restroom privileges and his work load should be adjusted so he was able to do so.  (Tr. 193).  There is no indication that this was temporary.  A prescription pad note dated one week earlier also stated that he was released to go back to work with "liberal bathroom privileges."  (Tr. 194).  Apparently the plaintiff did not continue treatment, however.

Mr. Huffman's treating family physician, Dr. Perry, made several notations concerning daily abdominal pain and diarrhea in 2005.  (Tr. 167, 169, 171).  He prescribed both Lomotil and Imodium.

State agency physicians who reviewed the evidence in November, 2005 and February, 2006 briefly indicated that the plaintiff did not have a "severe" impairment due to irritable bowel syndrome because there was no evidence of malnutrition, weight loss, or Crohn's disease.  (Tr. 176-7).

Subsequently, Dr. Perry submitted more office notes which showed complaints of "bad" diarrhea, passing mucus, and severe abdominal pain, and, on one occasion, left lower quadrant tenderness was noted, although the physician's notes are almost illegible in places and provide little detail.  They also indicated that the plaintiff needed another colonoscopy but could not afford it.  (Tr. 187).  Dr. Perry wrote a letter dated November 22, 2006 regarding this condition, which reviewed Dr. Martin's treatment and test results.  (Tr. 231).  The physician stated that despite being on multiple medications, Mr. Huffman had been unable to maintain

07-385  Eddie Wayne Huffman

employment at an eight-hour, five-day-a-week job without missing several days a month.  He added that, "for the most part, irritable bowel syndrome doesn't include objective findings on any particular x-ray study or colonoscopy study."  (Id.).

The ALJ disagreed with the state agency physicians and found that irritable bowel syndrome was a "severe" impairment, but found that Mr. Huffman's testimony overstated the problem and was not fully credible.  (Tr. 22).  He felt that Dr. Perry's opinion was not supported by objective or clinical findings and that his office notes reflected "only sporadic events of diarrhea and office visits primarily for medication refills for back pain."  (Tr. 20).  Going back to Dr. Martin's evidence, the ALJ apparently felt that the indications of alternating diarrhea and constipation were not supportive of a finding of irritable bowel syndrome, noted that diagnostic studies "do not confirm a pathological origin for the claimant's conditions," and that Dr. Martin's restrictions from August, 2002 including "unlimited restroom privileges" were not intended to be permanent conditions.  (Tr. 21).

Initially, the court notes that a "severe" impairment is an abnormality which significantly limits his ability to do basic work activity.  20 C.F.R. § 404.1520(c).  It is inconsistent to find that the plaintiff was "severely" impaired due to irritable bowel syndrome, yet to find no functional limitation as a result.[2]

---

[2]The ALJ stated that Mr. Huffman's impairments in combination warranted a restriction to medium level exertion.

12

More significantly, the rejection of the opinions of two treating physicians concerning the functional restrictions from the irritable bowel syndrome is poorly supported.  The lack of objective findings to support the diagnosis is not entirely persuasive in light of Dr. Perry's statement that the condition did not necessarily result in objective findings on x-ray or colonoscopy.  (Tr. 231).  This is consistent with information provided by the National Institute of Health, which states that the condition can be diagnosed based on symptoms even in the presence of a negative colonoscopy.   See Irritable Bowel Syndrome, available at http://digestive. niddk.nih.gov/ddiseases/pubs/irritable_bowel_syndrome, p. 3.  The same article states that some persons with irritable bowel syndrome alternate between constipation and diarrhea. Id., p. 1.  The condition is not related to Crohn's disease or ulcerative colitis.   Id., p. 7.  Therefore, it appears that these grounds for discounting the plaintiff's subjective complaints are simply erroneous.  Dr. Martin's restrictions were given well before the alleged onset date, after which the plaintiff returned to work.  It is not clear whether he had "unlimited" or "liberal" bathroom privileges at his job, however, and it cannot be said with certainty that his return to work meant that his symptoms were under control after August, 2002 to the extent that he would not require any special bathroom privileges.  Finally, while the plaintiff may not have mentioned abdominal pain and bowel problems at every visit to Dr. Perry, dismissing his treatment as only "sporadic" is unjustified, considering that there are clear indications of the problem in January, May, and August of 2005 and

13

07-385  Eddie Wayne Huffman

January and February of 2006.  As previously noted, Dr. Perry indicated that the plaintiff could not afford another colonoscopy and his complaints regarding the problem seem reasonably consistent and protracted for an unemployed person with limited resources.

Accordingly, bearing in mind the deference properly accorded to treating sources, the ALJ's rejection of Dr. Perry's opinion is not supported by substantial evidence.[3]

The decision will be remanded for further consideration.

This the 20th day of August, 2008.


Signed By:

*G. Wix Unthank*

United States Senior Judge

---

[3]The plaintiff contends on appeal that the ALJ's decision lacks sufficient detail to support the rejection of the treating physician opinion, citing Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).  In view of the court's holding, it is unnecessary to reach this issue.